**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:19CV-00737-DJH-RSE**

**TONY V. DANG**                                                                                      **PLAINTIFF**

**VS.**

**ANDREW SAUL,**
*Commissioner of Social Security*                                                              **DEFENDANT**

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

The Commissioner of Social Security denied Tony V. Dang's applications for supplemental security income benefits and disability insurance benefits. Dang seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Dang (DN 14) and the Commissioner (DN 17) have filed a Fact and Law Summary. The District Judge has referred the case to the undersigned United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendation. (DN 12).

### I. Findings of Fact

Tony V. Dang ("Dang") is fifty-five years old, lives alone in an apartment, and has a high school diploma from Vietnam. (Tr. 35-36). He claims he is unable to maintain employment because after working for about an hour, he needs to run his hands under hot water due to pain and numbness. (Tr. 54). After undergoing surgery on his right hand, he began receiving injections to help with the swelling. (Tr. 50). He reported good results from these injections. (*Id.*). He also uses

1

heat, medication, and topical cream to relieve the pain in his hands. (TR. 39-40). Because of these issues with his hands, his daughter helps him with food preparation, laundry, and other tasks. (Tr. 41). But Dang is able to take care of his personal needs, like showering, shaving, and getting dressed without needing assistance. (Tr. 38). Dang also drives one or two days a week to church or the gym. (Tr. 36-37). At the gym, Dang walks on the treadmill for around forty-five minutes. (Tr. 38, 59-60). In addition to the issues with his hands, Dang is HIV-positive. His T-cell count has gone up and down as his doctors have changed his medications and he experiences lack of appetite and weight loss. (Tr. 47).

Dang applied for supplemental security income benefits ("SSI") under Title XVI and disability insurance benefits ("DIB") under Title II, claiming he became disabled on October 15, 2015 (Tr. 234, 241), as a result of a tendon tear in his dominant hand, nerve damage, and HIV. (Tr. 267). His application was denied initially (Tr. 96, 108) and again on reconsideration (Tr. 125, 138). Administrative Law Judge Jerry Lovitt ("ALJ Lovitt") conducted a hearing in Louisville, Kentucky, on May 11, 2018. (Tr. 32). Dang attended the hearing with his attorney. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). ALJ Lovitt issued an unfavorable decision on September 17, 2018. (Tr. 23).

ALJ Lovitt applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and made the following findings.

1. Dang meets the insured status requirements of the Social Security Act through December 31, 2021. (Tr. 14).

2. Dang has not engaged in substantial gainful activity since October 15, 2015, the alleged

onset date. (*Id.*).

3. Dang has the severe impairments of HIV and carpal tunnel syndrome. (Tr. 15).

4. Dang does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 16).

5. Dang has the residual functional capacity to perform "light work" with the following limitations:

> The claimant is able to climb ramps and stairs frequently. The claimant is able to stoop, kneel and crouch frequently. The claimant should not climb ladders, ropes, scaffolds, or crawl. The claimant should avoid exposure to unprotected heights. The claimant should engage in no more than occasional overhead reaching with the right dominant hand. The claimant is able to engage in pushing and pulling of hand controls with the right dominant hand occasionally. The claimant is able to engage in handling and fine fingering occasionally with the right dominant hand. The claimant should not engage in any fast-paced production line, assembly line or quota driven work. The claimant would be off task for no more than 10 percent of the workday in addition to normally scheduled breaks and would miss no more than one day of work per month.

(Tr. 17).

6. Dang is unable to perform any of his past relevant work. (Tr. 21).

7. Dang was born December 31, 1964 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (Tr. 22).

8. Dang has at least a high school education and is able to communicate in English. (*Id.*).

9. Transferability of job skills is not material to the disability determination because the Medical-Vocational Rules framework supports a finding that Dang is not disabled, whether or not he has transferable job skills. (*Id.*).

10. Considering Dang's age, education, work experience, and residual functional capacity,

there are jobs that exist in significant numbers in the national economy that he can perform. (*Id.*).

11. Dang has not been under a disability, as defined in the Social Security Act from October 15, 2015, through September 17, 2018, the date of his decision. (Tr. 23).

Dang appealed ALJ Lovitt's decision. (Tr. 223). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Dang appealed to this Court. (DN 1).

## II. Conclusions of Law

### A. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the administrative law judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

B. Analysis

Dang identifies three issues with the Commissioner's decision. His first two claims relate to his ability to communicate in English and whether his communication skills allow him to perform the work identified by the vocational expert. Dang also argues that ALJ Lovitt's residual functional capacity determination is not supported by substantial evidence because he did not provide any weight limitations for Dang's upper extremities as opined by the consultative examiner. The Commissioner asserts that ALJ Lovitt properly found Dang was disabled because he applied the correct laws and his decision is supported by substantial evidence.

1. Dang's Ability to Communicate in English

First, Dang claims that ALJ Lovitt's determination that he is able to communicate in English is not supported by substantial evidence in the record. Dang emphasizes that during the hearing he testified without an interpreter and there were "significant communication gaps." (DN 14, at pp. 5, 9). Some of these gaps in communication, Dang argues, occurred when discussing critical issues to his case such as the effects of various treatment methods on his hands. (*Id.* at p. 9). He relies on the consultative examiner's note that he had slurred speech associated with his native Vietnamese language to argue that the record doesn't support his ability to communicate in English. (*Id.* at p. 10). The Commissioner responds that although ALJ Lovitt clarified a few questions during the hearing with Dang, there is no evidence that they weren't understanding each other and Dang never indicated he had difficulty communicating. (DN 17, at pp. 8-9).

The Commissioner is correct. While ALJ Lovitt and Dang's attorney had to clarify several questions for him during the hearing, Dang never expressed an inability to understand the proceeding. At no time did Dang, Dang's attorney, or ALJ Lovitt indicate that an interpreter was

5

necessary. Further, there was no evidence leading up to the hearing of Dang having a limited proficiency in English. In his applications for disability benefits, Dang noted his ability to speak, read, and write in English and identified English as his preferred language for speaking and reading. (Tr. 230). Likewise, his SSA-3368 form (Disability Report-Adult) indicated that he could speak and understand English, read and understand English, and write more than his name in English. (Tr. 266).

Dang takes the consultative examiner's statement somewhat out of context. Dr. Edgar Lopez-Suescom stated in his medical source statement that Dang's "[h]earing and speaking are normal" but that "he has some slurred speech associated with his Vietnamese native language." (Tr. 604). This commentary on Dang's dialect does not qualify as record evidence supporting Dang's alleged inability to communicate in English, especially since it followed Dr. Lopez-Suescum's finding that Dang's speaking was normal. Because there is no evidence from the hearing or elsewhere in the record that Dang could not understand English, ALJ Lovitt's conclusion that Dang is able to communicate in English is supported by substantial evidence.

2. Whether Dang's Communication Skills are Sufficient to Perform the Work Identified by the Vocational Expert

Dang next asserts that the Vocational Expert ("VE") at his hearing erred in only identifying one position available in the economy that he could perform – that of usher. (DN 14, at p. 10). He claims that neither the VE nor ALJ Lovitt discussed his communication issues as a factor in finding he could perform this occupation. (*Id.*). Because his "lack of oral comprehension and expression" were demonstrated throughout the hearing, he claims the VE's citation to the position of usher was not consistent with the Dictionary of Occupational Titles (DOT). (*Id.* at p. 11). The Commissioner again asserts that there is no record evidence supporting Dang's alleged inability to communicate

6

in English. (DN 17, at pp. 9-10). Dang's failure to challenge the VE during the hearing on a limitation in his ability to communicate in English, the Commissioner asserts, forfeits any argument regarding the VE's testimony. (*Id.* at pp. 11-14).

During the hearing, ALJ Lovitt posed a hypothetical to the VE with the same restrictions he ultimately adopted for Dang's residual functional capacity. (*See* Tr. 75-76). The VE opined that there would be jobs in the national economy as "ushers and lobby attendants" at the light level and as "protective service workers" at the sedentary level based on ALJ Lovitt's hypothetical restrictions. (Tr. 75-78). ALJ Lovitt asked whether the VE's testimony was consistent with the Dictionary of Occupational Titles (DOT), which the VE responded affirmatively. (Tr. 78). Dang's counsel was then given the opportunity to question the VE. He asked whether Dang's ability to perform the job of usher would be impacted if he was limited to no more than occasional dealings with the public, coworkers, or supervisors due to his "linguistic barrier." (Tr. 79). The VE responded that work as an usher would be precluded with that additional restriction. (*Id.*).

First, this Court has already determined that virtually no evidence exists from the hearing or from the comprehensive case record demonstrating Dang's alleged inability to communicate in or understand English. As noted above, Dang consistently indicated an ability and preference for communicating in English and at no point during the hearing indicated difficulty comprehending the proceeding. Without such evidence, Dang's proposed restriction to the VE of occasional contact with the public, coworkers, and supervisors is unsupported. Additionally, Dang's testimony regarding his prior work as a hairstylist and nail technician supports his ability to interact appropriately with the public during employment. Because there is no evidence to support the "very obvious linguistic barrier" advocated by Dang's counsel, it was not error for the ALJ to

reject the proposed restriction on communication with the public, coworkers, and supervisors on this basis.

Second, Dang did not challenge the specific components of the usher position under the DOT in questioning the VE. An usher, under the DOT: "Assists patrons at entertainment events to find seats, search for lost articles, and locate facilities, such as restrooms and telephones. Distributes programs to patrons. Assists other workers to change advertising display." DOT Listing 344.677-014, 1991 WL 672865. The DOT uses a "Scale of General Education Development" to assign reasoning, mathematical, and language skills needed for different jobs ranging from Level 1 (the lowest skill level) to Level 6 (the highest skill level). *See* DOT Appendix C, 1991 WL 688702. The occupation of usher requires a "reasoning level" of 2 and a "language level" of 1, both on the low end of the GED scale. Specifically, a reasoning level of 2 requires an individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written and oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* A "language level" of 1 requires an individual to "[s]peak simple sentences, using normal word order, and present and past tenses." *Id.* Although Dang's counsel posed an alternative hypothetical to the VE with a restriction of only occasional contact with the public, coworkers, and supervisors due to Dang's alleged linguistic barrier, he did not specifically challenge whether Dang could meet the reasoning and language levels required for the occupation of usher.

The Sixth Circuit has clarified that the current regulations consider the DOT as a source of "reliable job information." *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x, 313, 317, 2020 WL 97414, (6th Cir. Jan. 7, 2020) (citing 20 C.F.R. § 404.1566(d)(1)). In relying on vocational

evidence provided by a vocational expert, an ALJ must either ensure that the evidence does not conflict with the information in the DOT or must obtain a reasonable explanation for any conflict. *Id.*(citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) (quoting SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)); *see also Gallo v. Comm'r of Soc. Sec.*, 449 F. App'x 648, 650 (9th Cir. 2011) ("[V]ocational expert] testimony may become unreliable on account of a conflict with the DOT, but not on account of its compliance with the DOT.")). ALJ Lovitt satisfied this requirement when he asked the VE whether her testimony aligned with the DOT. Dang had the opportunity to cross-examine the VE on the specific components of the usher position but declined to do more than suggest an alternate limitation to ALJ Lovitt's hypothetical. Again, this suggested limitation is unsupported by any evidence in the record, including Dang's testimony and his prior work as a hairstylist and nail technician. It was not error for ALJ Lovitt to rely on the VE's testimony in rejecting a proposed limitation that Dang only have occasional contact with the public, coworkers, or supervisors based on an unsupported linguistic barrier.

### 3. ALJ Lovitt's RFC Determination

Lastly, Dang argues that ALJ Lovitt failed to include any weight limitations with his dominant right arm versus his non-dominant extremity in the RFC determination despite offering extensive limitations for Dang's upper right extremity. (DN 14, at pp. 11-12). Dang also claims ALJ Lovitt's RFC determination does not adequately address the limitations opined by the consultative examiner, which he alleges were more detailed and consistent than the findings of his hand specialist. (*Id.* at p. 12). The Commissioner responds that the ALJ gave ample and thoughtful consideration to the evidence concerning Dang's hand impairments and appropriately discounted the consultative examiner's opinion. (DN 17, at pp. 4-8).

The residual functional capacity finding is the ALJ's ultimate determination of what a claimant can still do despite his physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The ALJ bases his residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Opinions from non-treating sources are never assessed for controlling weight; instead, they are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These factors include the examining relationship (or lack thereof), specialization, consistency, and supportability. 20 C.F.R § 416927(c)(1)-(6). An exhaustive factor-by-factor analysis not required to satisfy the rule. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). Opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also*, *Tucker v. Comm'r of Soc. Sec.*, -- F. App'x --, 2019 WL 2418995, at *5 (6th Cir. June 10, 2019).

Dr. Edgar Lopez-Suescum performed a one-time consultative examination on Dang in May of 2016. In the "medical source statement" section at the end of his evaluation, he opined that Dang "should not be expected to do any lifting or strong pinching with the right hand" but "should be able to lift 5 pounds with the left upper extremity and left hand and carry 4 to 6 pounds with the left upper extremity for about 15 to 20 yards. (Tr. 604). These restrictions were based on his findings on exam that Dang had grip and pincher strength on the right hand as a whole at 3/5; individual grip and pincher strength of the right hand 0/5; normal fist clenching of the left hand at 5/5; motor strength of the upper both sides at 5/5; and motor strength of the lower extremities at

5/5. (Tr. 603).

ALJ Lovitt discussed Dr. Lopez-Suescum's exam findings and limitations but determined his opinion was entitled to little weight because his findings that Dang would not be able to do any lifting or strong pinching with the right hand and only lifting and carrying 4-6 pounds with the left hand were not consistent with the treatment notes from Dang's treating hand specialist. (Tr. 20). ALJ Lovitt also noted that Dr. Lopez-Suescum's restrictions were inconsistent with the hand specialist's repeated determinations in March and April of 2016, January of 2017, and January of 2018, that Dang could return to regular work status with no restrictions. (*Id.*). Just before discussing Dr. Lopez-Suescum's consultative opinion, ALJ Lovitt explained that he fully accounted for claimant's impairment and that the conservative treatment of record and Dang's improvement with treatment did not warrant any additional RFC restrictions. (*Id.*).

The Court finds that ALJ Lovitt's discounting of Dr. Lopez-Suescum's consultative opinion, albeit brief, is supported by substantial evidence. ALJ Lovitt considered the supportability and consistency of Dr. Lopez-Suescum's restrictions with those of Dang's treating hand specialist. Although Dang highlights that ALJ Lovitt assigned restrictive limitations regarding his hands and extremities elsewhere in his RFC, this alone does not support inclusion of weight limitations. Dang offers no support for these weight limitations beyond arguing that the CE's opinion was more detailed. But, again, the CE was a one-time consultative examiner; whereas, Dang treated with his hand specialist for several years. For these reasons, ALJ Lovitt's RFC determination is supported by substantial evidence, and he did not err in omitting the weight restrictions opined by Dr. Lopez-Suescum.

## RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

Regina S. Edwards, Magistrate Judge
United States District Court

August 24, 2020

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:    Counsel